IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION



FILED

APR 17 2015

Clerk, U.S District Court
District Of Montana
Helena

| | |
|---|---|
| LEE WALTER PROVANCE,<br><br>                             Plaintiff,<br><br>vs.<br><br>GALLATIN COUNTY, a political<br>Subdivision of the State of Montana,<br><br>                            Defendant. | No. CV-13-81-BU-SEH<br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

This case was tried to the Court without a jury on April 6-8, 2015. Plaintiff Lee Walter Provance ("Provance") was represented by William B. Hanson, Esq. Defendant Gallatin County, a political Subdivision of the State of Montana ("County") was represented by Calvin J. Stacey, Esq. Oral and deposition testimony and documentary evidence were introduced.

## AGREED FACTS

The following facts were agreed upon and incorporated into the Final Pretrial Order and are accepted by the Court as established:[1]

---

[1] Doc. 27 at 2-5.

1. At all times relevant, Provance and the County were residents and/or located within the geographical boundaries of the Butte Division of the United States District Court for the District of Montana.

2. Provance received notice of his right to institute a civil action against Gallatin County from the United States Department of Justice within 90 days before filing his Complaint.

3. At all relevant times, Provance was a resident of Gallatin County, Montana, and a citizen of the State of Montana.

4. At all relevant times, the County was a political subdivision of the State of Montana.

5. At all relevant times, the County was governed by a board of three county commissioners, elected by the residents of Gallatin County.

6. Provance was hired as the Road and Bridge Superintendent for the County on March 6, 2000.

7. On November 29, 2011, Provance signed a form titled "Gallatin County Health Benefits/Flexible Spending Accounts Election Form," with an effective date of January 1, 2012, pursuant to which he elected to participate in the County's "High Plan with Discount Pharmacy *without* Blood Screen," with a monthly premium for the same coverage except "with Blood Screen" of $612.

8. On Friday, August 17, 2012, Provance had outpatient surgery to his right shoulder at Bozeman Deaconess Hospital by Dr. Peter Kelleher, M.D., from Alpine Orthopedics and Sports Medicine ("Alpine") of Bozeman, Montana.

9. Provance returned to work on Monday, August 20, 2012, following his surgery on August 17, 2012.

10. Provance worked partial days from August 20, 2012, through and including September 11, 2012, without being absent for any full days.

11. Provance requested the County to conduct an investigation into the legality of the inquiry made of Provance's physician's physician assistant.

12. On September 12, 2012, a meeting was held with Provance and Earl Mathers ("Mathers"), and two county commissioners, Joe Skinner ("Skinner") and Steve White. The third commissioner, William A. Murdock, was out of the country.

13. A three-workday suspension without pay which was administered to Provance resulted in Provance not being paid wages in the amount of $1,032.

14. A letter was sent by certified and regular mail dated September 14, 2012, to Provance by the County concerning his employment.

15. By letter dated September 25, 2012, from Mathers to Provance, Provance's employment with the County was discussed.

16. On September 26, 2012, Provance and Mathers signed a "RETURN-TO-WORK AGREEMENT."

17. By memorandum dated October 23, 2012, Provance notified Mathers, Cynde Hertzog ("Hertzog"), and the Gallatin County Commissioners that he intended to retire on December 17, 2012.

18. By letter dated October 26, 2012, from Mathers to Provance, Mathers said, among other things, "At this time I accept your retirement effective immediately."

19. Provance's salary as of October 26, 2012, was $89,814 per year, which was the equivalent of $1,727 per week or $7,484 per month.

From the record, the Court makes the following additional:

## FINDINGS OF FACT

20. Provance received annual performance appraisals. Beginning March 2000 through March 2006, the performance appraisals were signed by the Gallatin County Board of Commissioners ("Commissioners"), a representative of Gallatin County's Human Resources Department, and Provance.

21. Earl Mathers ("Mathers") was hired as the Gallatin County Administrator in August 2006.

22. On September 15, 2006, the Commissioners issued a written memorandum to all Gallatin County department heads announcing that from that point forward, twelve departments, including Road and Bridge, would be under Mathers' direct supervision. The memorandum was initialed by each of the Commissioners. Provance received the memorandum.

23. Mathers conducted performance appraisals for Provance beginning in March 2007 through February 2012. Mathers wrote the performance evaluations, met with Provance, and signed the performance appraisals. The Commissioners did not participate in the performance appraisals.

24. In response to Provance's performance appraisal on February 27, 2009, Provance wrote he appreciated working for and with Mathers.

25. During trial, Provance acknowledged Mathers as "my boss," but later retracted the statement.

26. The evidence clearly establishes that Mathers was Provance's supervisor, and that Provance knew it or was responsible for knowing it.

27. In 2011, the County gave notice to its employees that it would change its health insurance plan for employees. Among the changes was a voluntary Wellness Program. Participation in the Wellness Program included voluntary blood screening. If an insured party chose to participate in the Wellness Program,

a $50.00 monthly premium would be waived. Blood test results were sent to the employee and any physician to whom the employee directed the results to be sent.

28. Provance attended a meeting sponsored by the County on July 26, 2011, at the Gallatin County Rest Home. At the meeting, representatives of the County's insurance provider, Allegiance, provided information on changes to the insurance plan. Provance expressed his displeasure with the Wellness Program and stated it violated his rights. The manner in which Provance expressed himself at the meeting made others present feel uncomfortable.

29. Provance furnished Hertzog, Gallatin County Human Resources Director, a copy of a United States Equal Employment Opportunity Commission letter discussing wellness programs in December 2011. Provance contended that Gallatin County's Wellness Program was illegal.[2]

30. Provance was notified in his 2012 performance evaluation by Mathers that he was concerned by the method in which Provance objected to the Wellness Program at the Gallatin County Rest Home. Provance responded by e-mail explaining his opposition to the Wellness Program.

31. Provance believed the blood draw results would not remain confidential. His belief was unfounded.

---

[2] Tab 107, Ex. GC 006369 - 72.

32. On August 17, 2012, Mathers e-mailed Hertzog indicating that Hertzog should inform Provance that he should not return to work until he obtained a doctor's release. On August 20, 2012, Hertzog requested Provance provide her department with work limitations from his doctor, if any.

33. Provance informed Hertzog that he had no work restrictions other than the instruction to not use his right arm which was held in a sling. He also told Hertzog he was in pain as a result of the surgery, but that he was able to work. Hertzog witnessed Provance having difficulty parking his vehicle with only one arm.

34. Hertzog asked Susan Shane ("Shane"), an employee of Gallatin County Human Resources Department, to contact Alpine to see if they would provide a work release for Provance to determine if he had any work restrictions. Shane first contacted Alpine on August 20, 2012, but did not hear back. She again contacted Alpine on September 10, 2012, and requested a work release from a receptionist.

35. On September 11, 2012, a Medical Status Form signed by Josh Spuller, an Alpine physician assistant, was faxed to the Gallatin County Human Resources Department. The medical status form, among other things, indicated that Provance was released to "Modified Duty." Restrictions to Provance's work

included limitations on use of his right hand, restrictions on climbing and lifting weight, restrictions from bending, kneeling, and squatting, and required Provance to use a sling.[3]

36. Shane drafted a Modified Work Program/Light Duty Work Agreement and attached the Medical Status Form sent by Alpine. Shane sent the documents to Hertzog. Hertzog sent the form to Mathers to present to Provance.

37. On September 11, 2012, Mathers called Provance and notified him of the Modified Work Program document and the need to meet and discuss it. Provance directed profanities at Mathers during the call for invading his personal life.

38. Provance drove to Commissioner Skinner's office. He yelled and cursed at Skinner about Mathers' conduct, and demanded Mathers be fired or he (Provance) would sue the County.

39. After leaving Skinner's office, Provance went to Mathers' office. At that meeting Provance again swore at Mathers for invading his personal life.

40. Mathers contacted Provance via e-mail on September 12, 2012, and instructed him to meet with himself and the Commissioners on the same day to discuss his conduct on September 11, 2012. Provance responded that he would

---

[3] Tab 24, Ex. PLTF_0113.

attend to discuss Mathers' conduct and his potential lawsuit.[4]

41. Provance met with Mathers and Commissioners Skinner and White on September 12, 2012. Wendy Wiedenmeyer ("Wiedenmeyer") was present in her office next to Mathers' office where the meeting took place. Provance walked into Wiedenmeyer's office and asked "where is the rotten son-of-a-bitch?" Provance then met with Commissioners Skinner and White and Mathers and again swore at them and threatened to sue. He made personal attacks upon those present which were meant to offend.

42. At the meeting on September 12, 2012, Mathers and Commissioners Skinners and White presented Provance with a letter noticing him that he would be suspended for three days without pay for his outbursts on September 11, 2012. The letter stated that Provance had violated several personnel policies.[5]

43. Provance brought to the meeting on September 12, 2012, a Medical Status Form dated September 12, 2012, which was different from the medical Status form sent by Alpine to Gallatin County Human Resources the previous day. The new form showed no restrictions whatsoever,[6] although the restrictions listed

---

[4] Tab 102, Ex. GC 004961.

[5] Tab 34, Ex. PLTF_0170-72.

[6] Tab 31, Ex. PLTF_2003.

on the earlier form from Alpine had not been lifted by Dr. Kelleher.

44. Provance expected disciplinary action for his behavior. He acknowledged that he knew his behavior violated personnel policy.

45. Provance continued to work through his three-day suspension by having contractors come to his home. County officials were unaware of Provance's continued work and did not approve of it.

46. On September 12, 2012, Provance e-mailed Hertzog appealing his suspension without pay. He made complaints that Mathers was not his supervisor, that his privacy rights had been violated, that Mathers' actions were due to Provance's views on employee medical privacy, and that Mathers hoped to elicit an angry response from Provance which would cause him to lose his job.[7]

47. Mathers, White, and Skinner had a letter drafted and sent to Provance on September 14, 2012. The letter provided Provance with notice of possible termination for his insubordinate, threatening, and unprofessional behavior on September 11 and 12, 2012. The letter gave Provance the right to respond to the proposed discharge within five days.[8]

---

[7] Tab. 37, Ex. GC 005936-39.

[8] Tab 36, Ex. PLTF _0173-74.

48. Provance received the notice of possible termination letter on September 18, 2012. He asked Hertzog for an extension to respond. Hertzog agreed to extend the period to respond to September 24, 2012.[9]

49. Provance emailed Hertzog on September 21, 2012, notifying her that he did not wish to pursue any action, grievance, or complaint against the County, Mathers, or the Commissioners.[10]

50. Provance called Mathers on September 21, 2012, to set up a meeting at Mathers' office. At the meeting on the same day, Provance apologized to Mathers. Mathers brought up the possibility of reinstating Provance.

51. Mathers met with Skinner and White and they agreed to let Provance continue his job. They scheduled a meeting with Provance on September 26, 2012, to discuss his return to work.

52. Immediately prior to meeting on September 26, 2012, with Mathers, Hertzog, Skinner, and White, Provance went to Hertzog's office to review a Return-to-Work Agreement. The Return-to-Work Agreement conditioned Provance's return upon his agreement that he would undergo mental and physical evaluations. Provance reviewed the terms of the Return-to-Work Agreement and

---

[9] Tab 38, Ex. GC 007052.

[10] Tab 110, Ex. GC 007055.

-11-

signed it.[11]

53. Provance later met with Mathers, Hertzog, Skinner, and White and apologized. Provance was reinstated. The September 14, 2012, termination letter was withdrawn.

54. Provance was deceptive and misleading in his apologies. He apologized as a ruse in an effort to be allowed to return to work.

55. Provance returned to work. His work performance appeared to return to normal. No incidents or complaints occurred. He never expressed concern with his Return-to-Work Agreement.

56. A mental health evaluation for Provance was arranged with a psychiatrist in Helena, Montana. Provance was notified of the appointment. Provance expressed fear of driving to another town with his shoulder issue, but Hertzog assured him the County would get him there.

57. On October 23, 2012, Provance sent a memorandum to the Commissioners, Mathers, and Hertzog, of his notice of his intent to take early retirement effective December 17, 2012, that he planned to take his accrued sick and vacation leave until the December 17, 2012, retirement date, and that he would do so to avoid the psychological testing and to recover from his upcoming

---

[11] Tab 51, PLTF_0194-95.

surgery on his left shoulder. He did not raise any issues concerning his job conditions.[12]

58. Mathers, on behalf of the County, sent a letter on October 26, 2012, to Provance immediately accepting his retirement.[13] Provance was paid for his remaining leave and received several thousand dollars more than he would have received had the County processed his retirement in December 2012.

59. None of Provance's beliefs that Mathers and Hertzog conspired together to force Provance to be fired, or that they plotted to make him angry because they knew it would result in an inappropriate outburst that would cause him to be fired, in part for his opposition to the Wellness Program, are supported by any competent evidence.

From the foregoing, the Court enters its:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties.[14] Venue is appropriate.[15]

2. Under Montana law, a county road superintendent serves at the

---

[12] Tab 59, Ex. PLTF_0207.

[13] Tab 62, Ex. PLTF_0213.

[14] *See* 28 U.S.C. § 1331.

[15] *See* L.R. 1.2(c)(2) and 3.2(b).

pleasure and under the direction and control of the board of county commissioners.[16] Nothing in Montana law limits county commissioners from delegating authority. County commissioners may exercise authority through agents or officers acting under their authority.[17]

3. The Commissioners lawfully appointed Mathers as supervisor of Provance and his position of Road and Bridge Superintendent.

4. It is a violation of law to retaliate against an individual because they opposed any act or practice made unlawful under the Americans with Disabilities Act ("ADA") or because "such individual made a charge" under the ADA.[18] Retaliation against an individual who opposed any act or practice based upon a "good faith, reasonable belief that the conduct was unlawful" is similarly prohibited by the ADA.[19]

5. An entity covered by the ADA "may conduct voluntary medical examinations . . . which are part of an employee health program . . . to employees at [a] work site."[20] Additionally, an entity covered by the ADA "may make

---

[16] *See* Mont. Code Ann. § 7-14-2301.

[17] *See* Mont. Code Ann. § 7-1-2104.

[18] 42 U.S.C. § 12203(a).

[19] *Parrish v. Sollecito*, 258 F. Supp. 2d 264, 267 (S.D.N.Y. 2003).

[20] 42 U.S.C. § 12112(d)(4)(B).

inquiries into the ability of an employee to perform job-related functions."[21] An entity covered by the ADA may require medical examination if the examination "is shown to be job-related and consistent with business necessity."[22]

6. "'Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'"[23]

7. Provance engaged in good faith opposition to the Wellness Program because he believed it was a violation of the ADA. This was protected activity.

8. No evidence has been provided to show the blood draw in the County's Wellness Program was anything but voluntary. Provance's beliefs about lack of validity of the program were unfounded.

9. The County was not required to seek or obtain Provance's approval to ask his doctor for work restrictions. The statute[24] permitting employers to make

---

[21] *Id.*

[22] 42 U.S.C. § 12112(d)(4)(A).

[23] *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Penn State Police v. Sunders*, 542 U.S. 129, 141 (2004)).

[24] *See* 42 U.S.C. § 12112(d)(4)(B).

-15-

inquiries into an employee's ability to perform job-related functions is plain on its face. The County had ample justification for taking that step. Provance stated he could drive, but admitted to having difficulties and was observed having difficulty driving. Good business sense mandated a query to Alpine of Provance's limitations, even when he stated he was able to work. No invasion of Provance's privacy or violation of statute occurred.

10. Provance's conduct at the meetings of September 11 and 12, 2012, was excessive in its impropriety. His behavior lacked justification or reasonableness. Provance knew his behavior was wrong and in contravention of policy and knew it would result in disciplinary action. His conduct was not justified, explained, or excused by his anger, the inquiry into his working limitations, or by his beliefs in the motives of others. The three-day suspension was justified and reasonable. Consideration of discharge was similarly warranted. Good cause for discharge was shown. A failure to act in response to Provance's conduct would have been a dereliction of duty by his supervisors.

11. Provance's belief in a conspiracy against him by county officials is unsupported by the record. The evidence supports no basis for a reasonable conclusion of conspiracy. No inappropriate conduct by county officials was proven.

12. Provance's actions were deceptive. He continued to work during his three-day suspension. He did not genuinely believe what he said in his apologies. His testimony lacked credibility and the lack of credibility cannot be ignored by the Court.

13. Provance withdrew his complaint without equivocation. Together with his apologies, Provance's actions precipitated discussion of and resulted in a negotiated and agreed upon Return-to-Work Agreement. The evidence supports no basis to justify a claim that Provance did not act as a competent human being in negotiating and signing the agreement. He gave up his claims and agreed to return to work under specific conditions he knew and understood. Given Provance's conduct on September 11 and 12, 2012, the agreement was reasonable. The deal struck was an accord and satisfaction. It resolved both sides' complaints and was valid and binding upon the parties.

14. County officials were justified in the conclusion that the matter was settled. No evidence was presented that the period from Provance's return to work to his retirement was anything other than business as usual. Provance gave no indication there were any problems.

15. Provance's claim related to driving to Helena was inconsistent with his claim of being to drive everywhere for his job. The two statements are

inconsistent and irreconcilable. Moreover, Hertzog had informed him that he would be driven to Helena if necessary.

16. No credible evidence exists that any retaliation by the County or its representatives for any reason whatsoever took place. No causal connection between any protected act by Provance and the disciplinary actions the County took through its agents was proven.

17. Provance voluntarily returned to his job. He then voluntarily retired. The situation which led to his retirement was precipitated by his own actions. He was not constructively discharged. He was not discharged at all.

18. Provance's claims all fail for lack of proof and lack of support in law. The County did not violate any of Provance's rights under the ADA or otherwise. The County is entitled to judgment dismissing all claims.

ORDERED:

1. The Complaint[25] is DISMISSED.

2. The Clerk is directed to enter judgment accordingly.

DATED this 17th day of April, 2015.

*Sam E. Haddon*
SAM E. HADDON
United States District Court

---

[25] Doc. 1.